**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------x

| | |
|---|---|
| Becky Cloonan, | Index No. 1:25-cv-06513 |
| David Marquez, | : |
| Wesley Craig, | |
| Paolo Villanelli, | |
| Leila Leiz, | :    **COMPLAINT** |
| Alessandro Cappuccio, | |
| Danai Christina Kilaidoni, | |
| Elena Casagrande, | : |
| Valerio Schiti, | |
| Mahmud Anjum Asrar, | |
| Joelle Jones, | : |
| Yildiray Cinar, | |
| Rafael Albuquerque, | |
| Tyler Crook, | : |
| Jenny Frison, | |
| Pia Guerra, and | |
| Jill Thompson, | : |
| | |
| Plaintiffs, | : |
| | |
| -against- | : |
| | |
| Cadence Comic Art Inc and | |
| Paolo Belfiore, | : |
| | |
| Defendants | |
| | : |

-------------------------------------------------------------------------x

Plaintiffs, Becky Cloonan, David Marquez, Wesley Craig, Paolo Villanelli, Leila Leiz,

Alessandro Cappuccio, Danai Christina Kilaidoni, Elena Casagrande, Valerio Schiti, Mahmud

Anjum Asrar, Joelle Jones, Yildiray Cinar, Rafael Albuquerque, Tyler Crook, Jenny Frison, Pia

Guerra, and Jill Thompson (collectively, "Artists") by their attorneys, Adwar Ivko, as and for their

complaint against Defendants Cadence Comic Art Inc ("Gallery") and Paolo Belfiore ("Dealer"),

allege as follows:

## NATURE OF THE ACTION

1

1.        This complaint details the egregious misconduct of Defendants, a New York-based art dealer and gallery, who have systematically deceived and defrauded Plaintiffs, internationally acclaimed and award-winning comic book artists, out of substantial sums of money. Artists, whose artworks have been featured in prestigious exhibitions and collected by renowned institutions worldwide, entrusted Defendants with the sale and management of their unique creations. However, Defendants have flagrantly violated their fiduciary and statutory obligations under New York's Arts and Cultural Affairs Law ("ACAL"), including the duty to hold Artists' artworks and sales proceeds in trust for their benefit.

2.        Defendants' actions include, but are not limited to, misappropriating hundreds of thousands of dollars through unreported sales, unauthorized commissions, improper deductions, and other deceptive practices. They further breached their fiduciary duties by failing to provide accurate and regular account statements, commingling trust funds, and neglecting to safeguard Plaintiffs' works from loss, damage, or theft. These acts of fiduciary chicanery have caused significant financial harm and undermined the trust placed in Defendants by Artists, each of whom has been represented by Cadence Comic Art Inc and its owner, Paolo Belfiore, for over fifteen years on average. Even more damning, Defendants have ignored the Artists' pleas to return unsold pieces and instead are holding these works hostage.

3.        As detailed below, Defendants' reprehensible conduct not only constitutes a breach of fiduciary duty but also violates the express provisions of ACAL, which mandates that art merchants hold artworks and sales proceeds in statutory trust for the benefit of artists. Artists seek to recover their actual damages, enjoin Defendants from further unlawful acts, and hold them accountable for their blatant disregard of their legal and ethical responsibilities.

**THE PARTIES**

4.      Plaintiff Becky Cloonan is an individual residing in and a citizen of State of Oregon, United States. Ms. Cloonan earns her livelihood through the sale of works of fine art and craft of her own creation.

5.      Plaintiff David Marquez is an individual residing in and a citizen of State of Texas, United States. Mr. Marquez earns his livelihood through the sale of works of fine art and craft of his own creation.

6.      Plaintiff Wesley Craig is an individual residing in and a citizen of Quebec, Canada. Mr. Craig earns his livelihood through the sale of works of fine art and craft of his own creation. Mr. Craig is a citizen of Canada.

7.      Plaintiff Paolo Villanelli is an individual residing in and a citizen of Rome, Italy. Mr. Villanelli earns his livelihood through the sale of works of fine art and craft of his own creation.

8.      Plaintiff Leila Leiz is an individual residing in and a citizen of Bologna, Italy. Ms. Leiz earns her livelihood through the sale of works of fine art and craft of her own creation.

9.      Plaintiff Alessandro Cappuccio is an individual residing in and a citizen of Rome, Italy. Mr. Cappuccio earns his livelihood through the sale of works of fine art and craft of his own creation.

10.      Plaintiff Danai Christina Kilaidoni is an individual residing in and a citizen of Athens, Greece. Ms. Kilaidoni earns her livelihood through the sale of works of fine art and craft of her own creation.

11.      Plaintiff Elena Casagrande is an individual residing in and a citizen of Aprilia, Italy. Ms. Casagrande earns her livelihood through the sale of works of fine art and craft of her own creation.

12.     Plaintiff Valerio Schiti is an individual residing in and a citizen of Rome, Italy. Mr. Schiti earns his livelihood through the sale of works of fine art and craft of his own creation.

13.     Plaintiff Mahmud Anjum Asrar is an individual residing in and a citizen of Vienna, Austria. Mr. Asrar earns his livelihood through the sale of works of fine art and craft of his own creation.

14.     Plaintiff Joelle Jones is an individual residing in and a citizen of State of Indiana, United States. Ms. Jones earns her livelihood through the sale of works of fine art and craft of her own creation.

15.     Plaintiff Yildiray Cinar is an individual residing in Berlin, Germany and a citizen of Turkey. Mr. Cinar earns his livelihood through the sale of works of fine art and craft of his own creation.

16.     Plaintiff Rafael Albuquerque is an individual residing in and a citizen of Porto Alegre, RS, Brazil. Mr. Albuquerque earns his livelihood through the sale of works of fine art and craft of his own creation.

17.     Plaintiff Tyler Crook is an individual residing in and a citizen of State of Oregon, United States. Mr. Crook earns his livelihood through the sale of works of fine art and craft of his own creation.

18.     Plaintiff Jenny Frison is an individual residing in and a citizen of State of Illinois, United States. Ms. Frison earns her livelihood through the sale of works of fine art and craft of her own creation.

19.     Plaintiff Pia Guerra is an individual residing in and a citizen of Vancouver, Canada. Ms. Guerra earns her livelihood through the sale of works of fine art and craft of her own creation.

20.     Plaintiff Jill Thompson is an individual residing in and a citizen of State of Illinois, United States. Ms. Thompson earns her livelihood through the sale of works of fine art and craft of her own creation.

21.     Artist is an "Artist" within the meaning of ACAL § 11.01(1).

22.     Upon information and belief, Defendant Cadence Comic Art Inc is a corporation organized and existing under the laws of the State of New York, with its principal place of business in Maspeth, New York.

23.     Upon information and belief, Defendant Paolo Belfiore is an owner, director, and officer of the Gallery. Upon information and belief, Mr. Belfiore is an individual residing in and a citizen of the State of New York, United States.

24.     Defendants Cadence Comic Art Inc and Paolo Belfiore are each engaged in, among other things, the business of exhibiting and selling on a commission basis works of fine art created by others and, as such, act as an "Art Merchant" within the meaning of ACAL § 11.01(2).

## JURISDICTION AND VENUE

25.     There is complete diversity of citizenship between all Plaintiffs and all Defendants in this case. The amount in dispute in this action, exclusive of interest and costs, exceeds the sum of $75,000. Therefore, this Court has jurisdiction over this dispute under 28 U.S.C. § 1332.

26.     This court has personal jurisdiction over all Defendants because they are domiciled in New York State and they have transacted business (such as receiving consignments, offering Artists' works for sale, and making arrangements concerning Artists' works in New York) in New York from which this action arose and have committed tortious actions withing the State that injured the Artists in New York.

27.     Venue is appropriate in this district pursuant to 29 U.S.C. § 1391(a) as a substantial part of the events and omissions giving rise to the claim occurred in the Southern District of New York and some of the unreturned consigned artworks are, upon information and belief, currently located in this district.

### FACTS

28.     Commencing in or around 2008 and at various times thereafter, Artists agreed to consign and caused to be delivered to Defendants hundreds of works of "Fine art" and "Craft" of their own creation, as those terms are defined in ACAL § 11.01(8)(9) (the "Consigned Artworks"), which the Gallery, acting through its principal Paolo Belfiore, undertook to exhibit and sell. Those works which were delivered to Defendants but neither sold nor returned to Artists are referred to as the "Unsold Consigned Artworks."

29.     N.Y. Arts & Cultural Affairs law § 12.01(1) provides in pertinent part:

1.     *Notwithstanding any custom, practice or usage of the trade*, the provision of the uniform commercial code or any other law, statute, requirement or rule, or any agreement, note, memorandum or writing to the contrary:

(a)     Whenever an artist or craftsperson, his heirs or personal representatives, *delivers or causes to be delivered* a work of fine art, craft or print of his own creation to an art merchant for the purpose of exhibition and/or sale on commission, fee or other basis of compensation, delivery to and acceptance thereof by the art merchant *establishes a consignor/consignee relationship* as between

such artist or craftsperson . . . and such art merchant with respect to the said work, and

(i)      such consignee shall thereafter be deemed to be the agent of such consignor with respect to the said work;

(ii)     such work is *trust property* in the hands of the consignee for the benefit of the consignor;

(iii)    any proceeds from the sale of such works are trust funds in the hands of the consignee for the benefit of the consignor;

\* \* \*

(v)     . . . *no such trust property or trust funds shall be subject or subordinate to any claims, liens or security interest of any kind or nature whatsoever*. (Emphasis supplied.)

N.Y. Arts and Cult. Aff. L. § 12.01(1) (McKinney Supp. 1997) (emphasis added).

30.    In addition to the Consigned Artworks, Artists caused to be delivered to Defendants photographs, videos slides, transparencies, catalogues, and other material relating to their artworks which belonged to them but were stored in the Gallery's files along with its records regarding Artists' artworks (i.e., various invoices, consignment forms, inventory cards, and computerized records) which identify and track the disposition of Artists' work. The above materials are collectively referred to herein as the "Inventory Records."

31.    For prolific artists like Plaintiffs, without access to and control of their Inventory Records, their studio operations are literally paralyzed—they cannot adequately respond to inquiries regarding their artwork, determine which pieces are available or which have been sold, to whom and for how much.

32.     Pursuant to the ACAL, Defendants became an agent of Artists, with a duty to hold Consigned Artworks and the Inventory Records as trust property and to hold the proceeds from sales of Artists' artworks as trust funds for the benefit of Artists. In addition, Defendants were expressly prohibited from subordinating Artists' artworks or the proceeds thereof to any claims, liens, or security interest of any kind or nature whatsoever.

33.     As trustee of Artists' property and funds, Defendants owed Artists the duty of undivided loyalty and the duty to (a) skillfully, diligently, and carefully account for the sale or other disposition of the Consigned Artworks; (b) keep honest, accurate, and correct accounts of all affairs relating to Artists' artworks; (c) keep and render true and accurate accounts; (d) furnish information in a timely manner; (e) segregate property, and all other obligations fundamental to the trustee/beneficiary relationship; and (f) safeguard Artists' works from loss, damage, or theft.

34.     At all times relevant herein and as more fully put forth below, Defendants failed to carry out these responsibilities.

35.     At all times relevant herein, Dealer committed or participated in the fiduciary and statutory breaches and other unlawful acts perpetrated by the Gallery and, therefore, is individually liable for her conduct.

36.     Artists detrimentally relied on Defendants' maintenance of an account for their benefit and on Defendants' timely reporting of the status of their artworks and any sales thereof.

37.     Defendants breached their obligations to Artists and defrauded Artists of property that Defendants were obligated to hold in trust solely for their benefit. Upon information and belief, rather than maintain a trust account for the benefit of Artists, Defendants wantonly commingled the trust funds belonging to Artists with the Gallery's and Dealer's own accounts, purposefully failed to pay any interest thereon, and refused demands to tender amounts due and owing to Artists.

Upon information and belief, Defendants earned interest which they credited to themselves on the trust funds belonging to Artists that the commingled with their own accounts.

38.      Upon information and belief, the Gallery acting through its principal Dealer, secretly sold numerous works for which it received in excess of **$473,000** (the "Secret Sales"). The Gallery, and Dealer in particular failed to disclose to Artists that these sales and transfers were made and refused to respond to repeated requests for information regarding the status of these artworks.

39.      Upon information and belief, the Gallery acting through its principal Dealer, secretly transferred artworks for which it received cash and/or other forms of consideration (the "Secret Transfers"). The Gallery, and Dealer in particular, failed to disclose to Artists that these transfers were made and refused to respond to repeated requests for information regarding the status of these artworks. Defendants never paid to Artists their share of the agreed upon retail value of these artworks.

40.      As consignee of Artists' artworks, Defendants were responsible for ensuring the integrity of artworks during the period of consignment. Defendants failed to fulfil their duties. To wit, numerous works have been lost, damaged, or stolen and, yet, upon information and belief, Defendants have not taken any meaningful action to recover, repair, or report these losses.

41.      In addition to breaching their fiduciary and statutory obligations, Defendants were required—but failed—to perform certain services in order to be entitled to a commission on the sale of Artists' artworks.

42.      Finally, Defendants violated, and continue to violate, New York law by refusing to return the Unsold Consigned Artwork and Inventory Records to Artists despite their repeated demands therefor.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Violation of Section 12.01 of Arts and Cultural Affairs Law)

43.    Artists repeat, reallege and reiterate the allegations of paragraphs 1 through 42 above with the same force and effect as though more fully set forth herein.

44.    Artists caused the Consigned Artwork to be delivered to Defendants for purposes of exhibition and sale on a commission basis, thereby consigning such works to Defendants.

45.    The Consigned Artworks were, until their sale to bona fide purchasers, trust property in the hands of Defendants for the benefit of Artists pursuant to the terms and restrictions of the ACAL. Thereafter, the funds received by Defendants as payment for the sold Consigned Artworks, were and continue to be trust property held for the benefit of Artists pursuant to the terms and restrictions of the ACAL.

46.    Upon information and belief, from 2008 to the present, Defendants breached their statutory obligations to Artist by, among other things:

(a)    unlawfully commingling the trust funds belonging to Artists with the Gallery's own accounts, failing to segregate Artists' funds and failing to pay them any interest accumulated thereon;

(b)    failing to provide accurate statements of account on a regular basis;

(c)    failing to provide the services they were required to perform to be entitled to over **$236,253** in commissions which Defendants collected on the sale of their artworks;

(d)    engaging in Secret Sales and Secret Transfers which they failed to report to pay Artists for despite repeated demands therefor;

(e)    failing to safeguard Artists' artworks from loss, damage, or theft and failing and refusing to pay to Artists for such losses despite repeated demands therefor;

10

(f)     failing to return Unsold Consigned Artworks and the Inventory Records to

Artists despite her repeated demands therefor;

(g)     failing to respond correctly, if at all, to inquiries from third parties regarding

the availability of Artists' artworks; and

(h)     upon information and belief, Defendants committed other acts of

misconduct which are not currently known to Artists but will be learned upon

further discovery.

47.     Defendants' conduct as set forth above constitutes a violation of the ACAL.

48.     At no time did Artists waive, whether orally or in writing, the trust fund status of

the Consigned Artwork, the proceeds from the sale of these works or the Inventory Records.

49.     As a result of Defendants' repeated breaches of fiduciary and statutory duties they

owed to Artists, they should not be permitted to profit from their wrongful conduct by retaining

any of the commissions previously collected by them in connection with the sales of Consigned

Artwork.

50.     By reason of Defendants' blatant violations of Artists' statutory rights, Artists have

been damaged in an amount to be determined at retrial, but not less than **$473,000**, plus interest

from the date of each violation along with punitive and exemplary damages in a sum to be

determined at trial and attorney's fees and costs.

### AS AND FOR A SECOND CAUSE OF ACTION
### (Action for Recovery of Chattel under CPLR Article 71)

51.     Artists repeat, reallege and reiterate the allegations of paragraphs 1 through 50

above with the same force and effect as though more fully set forth herein.

52.     Defendants held the Consigned Artwork and the Inventory Records as consignees

in trust for Artists' benefit.

53.     Defendants produced public exhibits of or otherwise offered for sale the Consigned Artwork at various times from 2008 to, upon information and belief, the present. On more than one occasion Defendants sold one or more artworks created by Artists to a customer.

54.     Defendants retained and continued to hold over 49 pieces of the Consigned Artwork which had not been sold—the Unsold Consigned Artworks. A list of the Unsold Consigned Artworks which Artists, upon information and belief, believe are still within the possession and control of the Gallery and/or the Dealer is annexed as Exhibit "A" and incorporated by reference herein. This list is not meant to be complete or exhaustive. To the contrary, upon information and belief, Defendants are in possession and control, or have consigned to undisclosed third parties, other works which can only be identified after full and complete discovery.

55.     By letter dated September 10, 2024 (attached as Exhibit "B"), Artists' counsel issued a formal demand to Defendants for the return of the Unsold Consigned Artworks, Inventory Records, and payment of all unpaid sales proceeds. The demand also required Defendants to cease and desist from selling, renting, or exhibiting the Unsold Consigned Artworks, which remain under Defendants' custody and control, and to cease and desist from holding themselves out as agents of any of the Artists. Additionally, the demand sought a sworn accounting identifying each of the Unsold Consigned Artworks and, for each of the sold Consigned Artworks (whether commissioned or not), the date of sale, the consideration agreed upon and actually received, the name and address of the purchaser, any discounts offered, and the reasons for such discounts.

56.     Despite the formal demand on September 10, 2024, and proof of delivery, Defendants have failed to respond, refused to return the requested items, and have not provided any cause or explanation for their refusal, which constitutes a denial. Proof of delivery to Defendants via FedEx (attached as Exhibit "C") establishes that the items were delivered to the

12

correct address and received by Defendants or their agents. Additionally, courtesy copies of the

demand were sent via email, and evidence (attached as Exhibit "D") confirms that these emails

were opened by Defendants and their agents. Under New York law, proof of delivery creates a

presumption of receipt, which Defendants have not rebutted, as their failure to respond or provide

an explanation further supports the claim of denial.[1]

57.     On November 8, 2024, Artists' counsel sent a follow-up letter to Defendants

reiterating the demands previously made (attached as Exhibit "E"). Proof of delivery via FedEx

(attached as Exhibit "F") confirms that the letter was delivered to Defendants' address and received

by them or their agents. Additionally, courtesy copies of the letter were sent via email, and evidence

(attached as Exhibit "G") shows that these emails were opened by Defendants and their agents.

Despite these efforts, Defendants have ignored the follow-up letter, failed to respond, and refused

to comply with the demands, without providing any cause or explanation for their inaction. This

failure to respond constitutes a denial of the demands made by Artists' counsel.

58.     Defendants' actions, as described above, constitute a violation of Arts and Cultural

Affairs Law § 12.01(1). Pursuant to this statute, Artists retain an unconditional right to the return

and possession of all Unsold Consigned Artworks and Inventory Records currently in the

possession, custody, or control of the Defendants. Under the law, the aforementioned Unsold

Consigned Artworks and Inventory Records are deemed trust property held for the benefit of

Artists, and no title, estate, or right to possession superior to that of Artists vests in Defendants.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Declaratory Judgment)**

---

[1] *IIG Cap. LLC v. Archipelago, L.L.C.*, 36 A.D.3d 401, *Matter of Yusufov*, 234 A.D.3d 71, *Nassau Prop. Invs., LLC v. Goffe*, 213 A.D.3d 679.

59.     Artists repeat, reallege and reiterate the allegations of paragraphs 1 through 58 above with the same force and effect as though more fully set forth herein.

60.     The Consigned Artworks and the Inventory Records are unique, irreplaceable and hold significant economic value.

61.     Artists are entitled to an order from the Court directing Defendants to immediately return all Unsold Consigned Artwork and Inventory Records to them, as these items are trust property held for the benefit of the Artists.

62.     Artists have no adequate remedy at law.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (Breach of Fiduciary Duties)

63.     Artists repeat, reallege and reiterate the allegations of paragraphs 1 through 62 above with the same force and effect as though more fully set forth herein.

64.     The ACAL imposes upon merchants such as Defendants fiduciary obligations towards artists who consign their works of fine art to them.

65.     Defendants wrongfully and intentionally breached their fiduciary obligations to Artist by, among other things:

      (a)     unlawfully commingling the trust funds belonging to Artists with the Gallery's and/or the Dealer's own accounts, failing to segregate Artists' funds and failing to pay them any interest accumulated thereon;

      (b)     failing to provide accurate statements of account on a regular basis;

      (c)     failing to provide the services they were required to perform to be entitled to commissions which Defendants collected on the sale of the Consigned Artworks;

14

(d)     engaging in Secret Sales and Secret Transfers which they failed to report or

repay to Artists for such losses despite repeated demands therefor;

(e)     failing to safeguard the Consigned Artworks from loss, damage or theft and

failing and refusing to repay Artists for such losses despite repeated demands

therefor;

(f)     failing to return Unsold Consigned Artwork and the Inventory Records to

Artists despite her repeated demands therefor;

(g)     failing to respond correctly, if at all, to inquiries from third parties regarding

the availability of Artists' artworks; and

(h)     upon information and belief, Defendants committed other acts of

misconduct which are not currently known to Artists but will be learned upon

further discovery.

66.     By reason of Defendants' breaches of their fiduciary obligations, Artists have been

damaged in an amount to be determined at trial, but not less than **$473,000** plus interest from the

date of breach, along with punitive and exemplary damages in a sum to be determined at trial and

attorneys' fees and costs.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (Conversion)

67.     Artists repeat, reallege and reiterate the allegations of paragraphs 1 through 66

above with the same force and effect as though more fully set forth herein.

68.     Notwithstanding the consignment of the Consigned Artwork to Defendants, Artists

retained all right, title, and interest therein.

69.     Defendants converted to their own use (a) the proceeds from the Secret Sales and

Secret Transfers; (b) the Unsold Consigned Artwork and Inventory Records which they refused to

return to Artist; and (c) the amounts improperly deducted from Artist's account for unearned commissions.

70.    Defendants have refused to return to Artists any of their property that they have converted, although due demand has been made therefor as noted above.

71.    By reason of Defendant's conversion of Artists' property entrusted to the Gallery and the Dealer, Artists have been damaged in an amount to be determined at trial, but not less than **$473,000** plus interest from the date of each conversion along with punitive and exemplary damages in a sum to be determined at trial and attorneys' fees and costs.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Accounting)

72.    Artists repeat, reallege and reiterate the allegations of paragraphs 1 through 71 above with the same force and effect as though more fully set forth herein.

73.    Artists are entitled to an accounting by Defendants of the sale, transfer, or other disposition of all of the Consigned Artworks and Inventory Records.

74.    Artists have suffered, are suffering, and will continue to suffer irreparable harm absent the grant of relief sought herein.

75.    Artists have no adequate remedy at law.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Breach of the Gallery's Obligations)

76.    Artists repeat, reallege and reiterate the allegations of paragraphs 1 through 76 above with the same force and effect as though more fully set forth herein.

77.    In consideration for Artists' obligation to pay the Gallery a commission on the Sale of their artworks, the Gallery was required to perform certain services in connection therewith. Specifically, among its other duties, the Gallery was required to field inquiries and handle correspondence from prospective purchasers, galleries, museums, and other cultural and

educational institutions, maintain an archive of the artist's work (including, but not limited to, reviews, magazine articles, catalogues, etc.) promote and support Artists' work, coordinate consignments to other art galleries and loans to museums, and ensure accurate record keeping and labeling of all Consigned Artworks.

78.     Defendants failed to perform the above duties. As such, Defendants are not entitled to any commissions on account of artworks sold.

79.     By reason of Defendants' breaches of their obligations, Artists have been damaged in an amount to be determined at trial, but not less than **$473,000** plus interest from the date of each breach, along with punitive and exemplary damages in a sum to be determined at trial and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment as follows:

A.          On the First Cause of Action, granting Artists judgment against the Gallery and Dealer, jointly and severally, in the sum of at least **$473,000** plus interest thereon from the date of each violation along with punitive and exemplary damages in a sum to be determined at trial;

B.     On the Second Cause of Action, an order, pursuant to CPLR § 7101 that Artist has the right to possession of all Unsold Consigned Artworks and the Inventory Records and directing Defendants immediately and unconditionally to return any such works in their possession, custody, or control to Artists at Defendants' sole cost and expense;

C.     On the Third Cause of Action, a judgment declaring that Defendants have no right of possession in the Unsold Consigned Artworks and the Inventory Records and that Artists retain sole right, title, and interest therein.

D.    On the Fourth Cause of Action, granting Artist judgment against the Gallery and Dealer, jointly and severally, in the sum of at least **$473,000** plus interest thereon from the date of each breach along with punitive and exemplary damages to be determined at trial;

E.    On the Fifth Cause of Action, granting Artist judgment against the Gallery and Dealer, jointly and severally, in the sum of at least **$473,000**, plus interest thereon from the date of each sale along with punitive and exemplary damages in a sum to be determined at trial;

F.    On the Sixth Cause of Action, directing Defendants to prepare an accounting of the artwork described herein and a declaration of Artists' right with respect to the commissions owed to them;

G.    On the Seventh Cause of Action, granting Artists judgment against the Gallery and Dealer, jointly and severally, in the sum of at least **$473,000** plus interest thereon from the date of each sale along with punitive and exemplary damages in a sum to be determined at trial; all together with costs and disbursements of this action, including attorneys' fees.


Dated:    New York, New York
          August 7, 2025

                                                ADWAR IVKO

                                                By: /s/Polina Ivko
                                                Polina Ivko, Esq.
                                                Bar No.: 5619747
                                                515 Madison Avenue
                                                Floor 6
                                                New York, NY 10122

                                                *Attorneys for Plaintiffs*